IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,          :
                                   :
          v.                       :   CRIMINAL NO.  1:96-CR-106
                                   :
WILLIE TYLER,                      :
          Defendant                :

*M E M O R A N D U M*

I.   *Introduction*

   Willie Tyler ("Tyler" or "Defendant"), is serving a life sentence on an August

2000 obstruction-of-justice conviction for tampering with a witness by murder.  He was

also convicted of obstructing justice by tampering with a witness by intimidation and

threats.  He has on several occasions sought collateral relief from the convictions,

including the filing of a motion under 28 U.S.C. § 2255.  His most recent effort began with

two pro se motions.

   In the first motion (Doc. 310), he argues that *Arthur Andersen LLP v. United

States*, 544 U.S. 696, 125 S.Ct. 2129, 161 L.Ed.2d 1008 (2005), rendered insufficient the

evidence to convict him in light of the federal "nexus" standard the Court employed for

the obstruction-of-justice offense at issue there.  In the second motion (Doc. 312), relying

on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and

its progeny, he argues that the sentence of life imprisonment is unconstitutional because

it is based on a finding of premeditation made by the court at sentencing rather than by

the jury.  Defendant invokes Fed. R. Civ. P. 60(b) and the All Writs Act, 28 U.S.C. § 1651, as authority for filing both motions.

Our review of the *Arthur Andersen* claim indicated that Defendant might be able to pursue it by way of 28 U.S.C. § 2241 because Defendant was essentially arguing that *Arthur Andersen* establishes that he was convicted for conduct that was not criminal. We appointed the Federal Public Defender to represent Tyler on this claim and to supplement his arguments.

During the course of the briefing on the *Arthur Andersen* claim, Defendant's counsel suggested that the Supreme Court's then upcoming decision in *Fowler v. United States*, ___ U.S. ___, 131 S.Ct. 2045, 179 L.Ed.2d 1099 (2011), would also be relevant to whether the government had established a nexus sufficient to support his two obstruction-of-justice convictions.  We agreed to consider *Fowler*, and the parties briefed the relevance of *Fowler* after the case was decided by the Supreme Court.

The issues have been forcefully and comprehensively  argued on both sides.  With the benefit of those arguments, we conclude as follows.  The only way we can exercise jurisdiction over Defendant's first motion is under 28 U.S.C. § 2241.  To establish jurisdiction, Defendant would have to show that either *Arthur Andersen* or *Fowler* decriminalized the conduct upon which his convictions were based.  Defendant asserts that they do because they show that the evidence the government relied on to establish a federal nexus was insufficient.  However, we believe that neither of these cases does that.  We must therefore dismiss the first motion for lack of jurisdiction.

Defendant's second motion must also be dismissed, also for lack of jurisdiction. This motion presents a challenge to Defendant's sentence, which makes it a 2255 motion, but because Defendant has already had a 2255 motion adjudicated, we lack jurisdiction to entertain this second 2255 motion without the Third Circuit's prior approval, 28 U.S.C. § 2255(h), which Defendant did not obtain. In any event, the Third Circuit already rejected the argument on Defendant's appeal of our denial of his 2255 motion.

II.   *Background*

On April 21, 1992, Doreen Proctor was murdered in Adams County, Pennsylvania. "Proctor's severely beaten, lifeless body was found alongside a country road" the day she was murdered. *United States v. Tyler*, 281 F.3d 84, 88 (3d Cir. 2002). Proctor was to be a witness later that day in a state-court drug trial against David Tyler, Defendant's brother. In July 1992, Defendant was arrested and charged under state law with Proctor's murder. Others charged and arrested were David Tyler, Roberta Ronique Bell, Jerome King, David King and Mary Hodge.

Tyler was tried in Adams County for criminal homicide and lesser charges. In May 1993, he was found not guilty of criminal homicide but guilty of conspiracy to intimidate a witness. He received two to four years in prison. In state court, David Tyler was found guilty of murder, and Bell was acquitted of all charges but, like Tyler, Bell was later convicted in federal court of tampering with a witness by murder and tampering with

a witness by intimidation and threats.  *See United States v. Bell*, 113 F.3d 1345 (3d Cir.

1997)(affirming Bell's conviction).

Defendant served his state time, but on April 16, 1996, a federal grand jury

handed up a four-count indictment.  At issue here are the offenses charged in Count II,

tampering with a witness by murder in violation of 18 U.S.C. § 1512(a)(1)(A) and (C), and

Count III, tampering with a witness by intimidation and threats in violation of 18 U.S.C. §

1512(b)(1), (b)(2)(D) and (b)(3).[1]  At the time of the offense, in pertinent part, 18 U.S.C. §

1512(a)(1), dealing with tampering with a witness by murder, provided criminal sanctions

for:

> **(a)(1)** Whoever kills or attempts to kill another person, with
> intent to--
>
> **(A)** prevent the attendance or testimony of any person in an
> official proceeding;
>
> . . . . or
>
> **(C)** prevent the communication by any person to a law
> enforcement officer . . . of the United States of information
> relating to the commission or possible commission of a
> Federal offense . . . .

In pertinent part, 18 U.S.C. § 1512(b), dealing with tampering with a witness by

intimidation and threats, provided criminal sanctions for:

---

[1]     Count I charged Defendant with conspiracy under 18 U.S.C. § 371 involving the
substantive allegations of Counts II, III, and IV.  Count IV charged Defendant with using a
firearm to commit a crime of violence under 18 U.S.C. § 924(c).

**(b)** Whoever knowingly uses intimidation or physical force, threatens . . . or attempts to do so, or engages in misleading conduct toward another person, with intent to--

   **(1)** influence, delay, or prevent the testimony of any person in an official proceeding;

   **(2)** cause or induce any person to–

. . . .

     **(D)** be absent from an official proceeding to which such person has been summoned by legal process; or

   **(3)** hinder, delay, or prevent the communication to a law enforcement officer . . . of the United States of information relating to the commission or possible commission of a Federal offense . . . .

In pertinent part, Count II charged Tyler with knowingly killing Doreen Proctor on or about April 21, 1992, to prevent her attendance at any future criminal proceedings brought by the Tri-County Drug Task Force (a violation of section 1512(a)(1)(A)) and to prevent her from making a communication to a law enforcement officer of information relating to the possible commission of a federal offense, the distribution of cocaine or the possession with intent to distribute cocaine (a violation of section 1512(a)(1)(C)).

In pertinent part, Count III charged Tyler with intimidating Proctor, using physical force against her and threatening her, all done knowingly to prevent her attendance at any future criminal proceedings brought by the Tri-County Drug Task Force (a violation of section 1512(b)(1)), to cause her to be absent from any future criminal proceedings brought by the Tri-County Drug Task Force (a violation of section

5

1512(b)(2)(D)) and to prevent her from making a communication to a law enforcement officer of information relating to the possible commission of a federal offense, the distribution of cocaine or the possession with intent to distribute cocaine (a violation of section 1512(b)(3)).

An "official proceeding" is "a proceeding before a judge or court of the United States."  18 U.S.C. § 1515(a)(1)(A).  A "law enforcement officer" is "an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant . . . authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense . . . ."  *Id.* § 1515(a)(4)(A).  The official proceeding did not have to "be pending or about to be instituted at the time of the offense."  *Id.* § 1512(f)(1)(formerly codified at subsection (e)(1)).  Nor did the government have to prove that the defendant knew that the official proceeding was a federal one or that the law enforcement officer was a federal one or acting as an advisor or consultant to the federal government.  *Id.* § 1512(g)(1) and (2)(formerly codified at subsections (f)(1) and (2)).

In his first trial, Tyler was found guilty on all counts.[2]  In his second trial, in August 2000, the jury acquitted him of the conspiracy charge but found him guilty of the other charges.  In January 2001, we sentenced him to life in prison on count II after

---

[2]     Defendant's first direct appeal resulted in a remand to determine if Defendant was entitled to a new trial based on *Miranda* issues arising from two statements Defendants had made to police.  *United States v. Tyler*, 164 F.3d 150 (3d Cir. 1998).  We granted Defendant a new trial.

concluding at the sentencing hearing that the guideline section applicable to the offense was U.S.S.G. § 2A1.1, first-degree murder.  We also sentenced him to a concurrent sentence of ten years on count III and a sentence of five years on count IV to run consecutively to the sentence on count III.

The following evidence at the second trial is pertinent to Defendant's claim that no federal nexus was proven.  The Tri-County Drug Task Force was composed of Cumberland, Perry and York Counties.  (Doc. 337-1, trial transcript, CM/ECF p. 5).[3] Ronald Diller, employed by the Pennsylvania Office of Attorney General, Bureau of Narcotics Investigation (BNI), was the Task Force's coordinator.  (*Id.*).  As its coordinator, Diller was responsible for developing the local and state-level cases up to the national level.  (Doc. 337-3, CM/ECF p. 53).  Diller would meet with the local officers and review their cases for "potential multi-jurisdictional involvement."  (Doc. 337-1, CM/ECF p. 7). Diller testified that when it appeared that a case would go multi-jurisdictional, he would make the appropriate contacts with the DEA, the FBI and the IRS.  (*Id.*, CM/ECF p. 6). Diller's practice was to review the evidence with the local investigator, debrief the witness, and, if the evidence so indicated, bring in federal investigators for the follow-up investigation.  (Id., CM/ECF pp. 12-13).

Diller acted as an adviser and consultant with the DEA.  (Doc. 337-1, CM/ECF pp. 6; Doc. 337-3, CM/ECF p. 43).  Between three and five cases are referred

---

[3]   We refer to the page numbers assigned by the Case Management/Electronic Case Files (CM/ECF) system.

annually from the Tri-County Drug Task Force to DEA for prosecution.  (Doc. 337-1, CM/ECF p. 8).  According to a DEA agent, the DEA regularly adopted cases from state and local task forces, including the Tri-County Drug Task Force.  (Doc. 337-3, CM/ECF pp. 56-57).  The agent also testified that of the 246 DEA cases initiated in the Middle District of Pennsylvania between 1984 and 1996, 159 (65 percent) of those cases were worked jointly with state and local task forces.  (*Id.*, CM/ECF pp. 59-60).

At the time of her death, Doreen Proctor was an informant for David Fones, a narcotics detective for the Borough of Carlisle Police Department who was also working with the Tri-County Drug Task Force.  (Doc. 337-3, CM/ECF pp. 2, 5).[4] According to Fones, Proctor was providing him with information about "individuals she knew in Harrisburg."  She also supplied him with information about David Tyler's source for cocaine in New York City and about David Tyler's ties to "various Jamaicans in the Carlisle and Adams County area and said that [David Tyler] also went to Jamaica himself."  (*Id.*, CM/ECF pp. 8-9).  Fones testified that the next step was evaluation of the information Proctor had provided to see if further investigation was warranted, and this was Diller's duty.  (*Id.*, CM/ECF p. 9).

According to Fones, Diller was aware of Doreen Proctor; he had worked with her, being present when she made some controlled buys in Carlisle and on one occasion had placed a body wire on her.  (*Id.*, CM/ECF p. 10).  Detective Fones testified that he would have met with Diller to discuss a further role for her.  (*Id.*, CM/ECF p. 11).

---

[4]  Carlisle is located in Cumberland County.

According to Diller, he had interviewed Proctor about David Tyler, Butch Evans and Mary Jane Hodge, and also about a potential target in Harrisburg.  (Doc. 337-1, CM/ECF pp. 9-10).  It was significant that Proctor had provided information concerning drug trafficking activities in Harrisburg because Harrisburg is a "source city" for nearby municipalities and Harrisburg drug distributors generally in turn acquire drugs from "source cities" such as New York City or Philadelphia.  (*Id.*, CM/ECF pp. 10-11).

At the time of Proctor's murder, Diller was unaware she had told Detective Fones about David Tyler's drug sources in New York City or ties to Jamaicans.  (*Id.*, CM/ECF p. 12).  However, that was the type of information Diller said he would have found significant in deciding whether Proctor would be a federal witness. (*Id.*, p. 13).  He testified that he intended "to fully debrief Doreen Proctor, to discuss with her other individuals or locations that we had previously discussed and continue the investigation from there."  (*Id.*, p. 12).  Diller intended at the time of Doreen Proctor's murder to refer her to the DEA for use as a witness.  (*Id.*, p. 14).

There was no evidence presented to show that a federal proceeding had been instituted, about to be instituted, or even contemplated at the time that Proctor was murdered.  Diller testified that Proctor had not testified in any federal proceedings, had not been scheduled to testify in any federal proceedings, and had not been referred to a federal agency at the time of her murder.  In rejecting the government's argument in co-defendant Bell's direct appeal "that 'federal proceedings were, in fact, contemplated as a result of the victim's discussions with Special Agent Diller,'" the Third Circuit stated:

> Diller's testimony does not bear this characterization.  He did not say anything that can be construed to mean that the Task Force had already decided at the time of Proctor's murder to make a federal case out of the drug trade in which [David] Tyler, Bell, and others were engaged, or that it had even thought about doing so.

*Bell*, 113 F.3d at 1348 n.2.  In fact, there was no federal involvement through April 1992, (Doc. 336-1, CM/ECF p. 22; Doc. 336-2, CM/ECF pp. 6, 15-16; Doc. 336-3, CM/ECF pp. 3-4), the month of Proctor's murder.[5]

The DEA agent testified that a witness who could provide the following hypothetical facts would "absolutely" be a federal witness: (1) there was a cocaine distribution network active in Cumberland County; (2) the individual behind the network had drug contacts in Harrisburg, Dauphin County; and (3) this individual traveled to Jamaica to get drugs and has another source of drugs in New York City.  (Doc. 337-3, CM/ECF pp. 60-61).

III.   *Discussion*

A.  *Defendant's Claims Under* Arthur Andersen *and* Fowler
    *Are Only Cognizable Under 28 U.S.C. § 2241*

Defendant's pro se argument is that he may pursue his *Arthur Andersen* claim under the All Writs Act, 28 U.S.C. § 1651, as a petition for a writ of *audita querela* or as a petition for a writ of error *coram nobis*.  He also invokes Fed. R. Civ. P. 60(b).  By

---

[5]  After Tyler's co-defendant, Roberta Ronique Bell, was acquitted of Proctor's murder in state-court, an FBI agent started the investigation in about June 1993 that ultimately led to Defendant's conviction on the obstruction-of-justice charges.  (Doc. 310, attached affidavit, CM/ECF p. 18).

extension, this argument also covers the *Fowler* claim presented in his later filings.[6]

Because this argument bears on the scope of our review of the *Arthur Andersen* and

*Fowler* claims, we note our disagreement with it.

We begin by noting that we have jurisdiction over the claims under 28

U.S.C. § 2241.  Defendant has already had a section 2255 motion adjudicated, so he

cannot file another 2255 motion unless he satisfies the section's gatekeeping

requirements.  *See* 28 U.S.C. § 2255(h).  Defendant cannot satisfy the gatekeeping

requirements, *see In re Dorsainvil*, 119 F.3d 245, 247-48 (3d Cir. 1997), so section 2255

is foreclosed.  However, he can invoke section 2241 under section 2255's safety-valve

provision, § 2255(e), because of the nature of his claims and how it is that he did not

present them as part of his section 2255 motion.  Defendant is claiming that in light of

*Arthur Andersen* and *Fowler*  an essential element of both of his convictions was not

proven, with the result that he was convicted of conduct that was not criminal.

Additionally, he was not able to present these claims in his section 2255 motion because

the Supreme Court had not yet decided *Arthur Andersen* and *Fowler*.  In these

circumstances, section 2241 is available.  *See Dorsainvil*, 119 F.3d at 251-52 (section

2241 is available when section 2255 is inadequate or ineffective because its gatekeeping

requirements prevent a petitioner from presenting a claim that a change in the law after

---

[6]   His counsel also argues that if section 2241 relief is unavailable or denied, he is entitled to proceed by way of these three procedural avenues.  We do not understand counsel's position to be, as opposed to Defendant's, that even if we consider and deny the section 2241 motion on the merits, Defendant is still entitled to pursue his claims by way of these other avenues.  Instead, we understand counsel's position to be a response to the government's assertion that section 2241 is unavailable because *Dorsainvil* is distinguishable.

his 2255 motion was considered has made the conduct for which he was convicted no longer criminal).  Defendant's claims are "sufficiently colorable . . . for review under § 2241."  *Id.* at 252.

However, section 2241 is the only avenue of relief available to Defendant.  The writ of *audita querela* "is available in criminal cases to the extent it fills in gaps in the current system of post-conviction relief."  *Massey v. United States*, 581 F.3d 172, 174 (3d Cir. 2009).  However, "[t]here is no gap to fill in the post-conviction remedies" because a defendant may rely on a motion under 28 U.S.C. § 2255 "to collaterally challenge a federal conviction or sentence."  *Id.* (footnote omitted).  And if section 2255 is "inadequate or ineffective" to test the legality of his detention, the defendant has resort to section 2241.  *Id.* at 174 n.1.

*Coram nobis* is likewise unavailable.  First, *coram nobis* is only available for a person, unlike Defendant, who is no longer in custody.  *United States v. Rhines*, 640 F.3d 69, 71 (3d Cir. 2011).  Second, *coram nobis* is not available simply because Defendant cannot satisfy the gatekeeping requirements of section 2255.  *Id.* at 72.  And, as noted above, if section 2255 is "inadequate or ineffective" to test the legality of his detention, the defendant has resort to section 2241.

Finally, Defendant cannot rely on Fed. R. Civ. P. 60(b).  Defendant asserts that he can because he says he is attempting to obtain relief from the order of August 11, 2003, denying his 2255 motion, and from the order of October 29, 2003, denying his

motion to alter or amend that order.  (Doc. 310, the first pro se motion, CM/ECF pp. 9,

15).  We disagree.

Rule 60(b) applies to section 2255 proceedings as long as it is "'not

inconsistent' with applicable federal statutory provisions and rules."  *Gonzalez v. Crosby*,

545 U.S. 524, 529, 125 S.Ct. 2641, 2646, 162 L.Ed.2d 480 (2005)(quoted citations

omitted).  If a Rule 60(b) motion raises a claim that attacks the defendant's criminal

conviction, it must be treated as a second or successive 2255 motion so the limitations

on filing such a motion are not circumvented.  *Id.* at 531, 125 S.Ct. at 2647.  Rule 60(b) is

thus unavailable to Defendant because the relief he seeks, as made clear elsewhere in

his first pro se motion, is an attack on his convictions.

Defendant is thus limited to his remedy under section 2241, and we can

exert jurisdiction over his section 2241 petition only if he can show that either *Arthur*

*Andersen* or *Fowler* decriminalized the conduct that led to his obstruction-of-justice

convictions.  To establish this we believe he has to show that no reasonable juror would

have found him guilty beyond a reasonable doubt on the evidence the government

presented at trial.  *See Romero v. Holt*, 240 F. App'x 934, 935 (3d Cir. 2007)

(nonprecedential)(borrowing the no-reasonable-juror standard from *House v. Bell*, 547

U.S. 518, 537, 126 S.Ct. 2064, 2077, 165 L.Ed.2d 1 (2006), in deciding that the

defendant could not invoke section 2241 on a claim of actual innocence); *see also Martin*

*v. Martinez*, No. 11-837, 2012 WL 140420, at *4 (M.D. Pa. Jan. 18, 2012)(employing the

13

no-reasonable-juror standard in dismissing a section 2241 petition); *Rhyne v. United States*, No. 10-2016, 2010 WL 4687816, at *3 (D.N.J. Nov. 10, 2010)(same).

### B.  *The* Arthur Andersen *and* Fowler *Claims*

We turn now to the *Arthur Andersen* and *Fowler* claims.  Defendant argues that he is innocent of the obstruction-of-justice offenses because the evidence the government relied on to establish the federal nexus for these offenses was insufficient under either of these cases.  Defendant asserts that the government only proved that Proctor was "a potential federal witness, who might have testified at a possible future federal proceeding, or might have provided information for a possible future federal investigation."  (Doc. 336, Def.'s Supplemental Memorandum re Fowler, CM/ECF p. 1)(internal quotations omitted); Doc. 319, Def.'s Reply Brief re *Arthur Andersen*, CM/ECF p. 23).  Defendant argues that both cases require more proof of a federal nexus than that Proctor might have been a witness at a possible federal proceeding, or might have provided information in a federal investigation that might have taken place.  He adds that otherwise the federal government is punishing what is really a state-law crime.

As noted, Defendant was convicted of tampering with a witness by murder in violation of 18 U.S.C. § 1512(a)(1)(A) and (C), and tampering with a witness by intimidation and threats in violation of 18 U.S.C. § 1512(b)(1) and (b)(3).  Since Defendant's argument focuses on the nexus requirement, our only concern is with two elements common to both offenses, tampering to prevent a person's "testimony" "in an official proceeding," sections 1512(a)(1)(A) and 1512(b)(1), and tampering to "prevent" a

14

"communication" "to a law enforcement officer."  §§ 1512(a)(1)(C) and 1512(b)(3).  As noted, an "official proceeding" must be a federal proceeding, and "a law enforcement officer" must be a federal law enforcement officer.

>    1.  Arthur Andersen *Does Not Establish that Defendant Is*
>        *Innocent of His Obstruction-of-Justice Offenses*

In *Arthur Andersen LLP v. United States*, 544 U.S. 696, 125 S.Ct. 2129, 161 L.Ed.2d 1008 (2005), Arthur Andersen LLP, the auditor for the financially troubled Enron Corporation, instructed its employees to destroy documents related to Enron pursuant to a document retention policy, and then told them to stop when Arthur Andersen was served with an SEC subpoena for its records in relation to an SEC investigation of Enron.  Arthur Andersen was indicted under section 1512(b)(2)(A) and (B).  The indictment charged that Arthur Andersen "'did knowingly, intentionally and corruptly persuade' its 'employees, with intent to cause' them to withhold documents from, and alter documents for use in, 'official proceedings, namely: regulatory and criminal proceedings and investigations.'"  544 U.S. at 701, 125 S.Ct. at 2134.[7]

Arthur Andersen was found guilty, and it appealed the jury instructions.  The Fifth Circuit concluded that the instructions were proper, deciding that "the jury need not find any consciousness of wrongdoing" for there to be a criminal violation.  *Id.* at 702, 125 S.Ct. at 2134.

---

[7]    In addition to threats and intimidation, the charges against Tyler, section 1512(b) also makes it a crime to "knowingly . . . corruptly persuade[ ] another person" to withhold documents from an official proceeding, a section 1512(b)(2)(A) offense, and to alter documents for use in an official proceeding, a section 1512(b)(2)(B) offense.

The Supreme Court disagreed.  It found two problems with the instructions.  First, they left out any requirement that there be "consciousness of wrongdoing."  *Id.* at 706, 125 S.Ct. at 2136.  The jury was instructed that Arthur Andersen could be found guilty "even if [it] honestly and sincerely believed that its conduct was lawful . . . ."  *Id.*, 125 S.Ct. 2136.  The jury was also told that it could find that Arthur Andersen had acted "corruptly" if it merely "intended to 'subvert, undermine, or impede' governmental factfinding by suggesting to its employees that they enforce the document retention policy," without any requirement of any type of dishonesty being involved.  *Id.*, 125 S.Ct. 2136.

The Court based the requirement of conscious wrongdoing on its traditional restraint in interpreting criminal statutes so that there is a fair warning of the conduct that violates the statute.  *Id.* at 703, 125 S.Ct. 2134.  In this regard, it was significant that the underlying conduct, persuasion, was "by itself innocuous."  *Id.*, 125 S.Ct. 2134.  Even persuasion intended to cause a person "to 'withhold' testimony or documents from a Government proceeding or Government official is not inherently malign."  *Id.* at 703-04, 125 S.Ct. at 2134.[8]  The Court gave three examples, among them a lawyer advising a client to withhold documents from the government under the attorney-client privilege.  *Id.* at 704, 125 S.Ct. 2135.  It also observed that document retention policies "which are

---

[8]   Here the Court noted that section 1512(b)(2) addresses testimony as well as documents.  *Id.*, n.8, 125 S.Ct. at 2134 n.8.

16

created in part to keep certain information from getting into the hands of others, including

the Government, are common in business." *Id.*, 125 S.Ct. at 2135.

The second difficulty with the instructions, and the one relevant to

Defendant's claim here, was that:

> They led the jury to believe that it did not have to find *any*
> nexus between the "persua[sion]" to destroy documents and
> any particular proceeding.  In resisting any type of nexus
> element, the Government relies heavily on § 1512(e)(1),
> which states that an official proceeding "need not be pending
> or about to be instituted at the time of the offense."  It is,
> however, one thing to say that a proceeding "need not be
> pending or about to be instituted at the time of the offense,"
> and quite another to say a proceeding need not even be
> foreseen.  A "knowingly . . . corrup[t] persaude[r]" cannot be
> someone who persuades others to shred documents under a
> document retention policy when he does not have in
> contemplation any particular official proceeding in which those
> documents might be material.

*Id.* at 707, 125 S.Ct. 2136-37 (footnote omitted).

The Court relied on *United States v. Aquilar*, 515 U.S. 593, 115 S.Ct. 2357,

132 L.Ed.2d 520 (1995), to support its imposition of a nexus element requiring the

government to show that a defendant at least had to have in contemplation a particular

official proceeding.  In *Aquilar*, the defendant was charged with obstructing justice under

the "omnibus" or "catchall" clause" of 18 U.S.C. § 1503, which in pertinent part, prohibits

persons from endeavoring to influence obstruct or impede "the due administration of

justice."  The defendant was convicted of lying to an FBI agent to influence, obstruct or

impede a then existing grand-jury proceeding.  The defendant knew about the grand jury,

but there was no evidence that the agent would have actually testified before the grand

17

jury or that the defendant's false statements would be provided to the grand jury. *Id.* at 600, 601, 115 S.Ct. at 2362, 2363. Concerned about the very broad language of the catchall provision and that criminal statutes should provide fair warning of the conduct they proscribe, the Court adopted a nexus requirement, the same requirement that some of the courts of appeals had already grafted onto the omnibus clause of section 1503, including the Third Circuit. This element requires the government to show that the defendant acted "with an intent to influence judicial or grand jury proceedings," or as put by some courts, including the Third Circuit, to show that the defendant's conduct "have a relationship in time, causation, or logic with the judicial proceedings." *Id.* at 599, 115 S.Ct. at 2362 (citing *United States v. Walasek*, 527 F.2d 676, 679 and n.12 (3d Cir. 1975)). The Court was concerned that "if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct." *Id.* at 599, 115 S.Ct. at 2362.

In moving to vacate his convictions under *Arthur Andersen*, Tyler contends that *Arthur Andersen*'s nexus requirement applies to all offenses under section 1512; further, that it applies to the law-enforcement-officer-communication element as well as the "official proceeding" element. According to Tyler, for any conviction under section 1512(a) and (b), *Arthur Andersen* requires the government to prove a nexus showing "that an official investigation or proceeding [was] pending or about to be instituted at the time of the obstructive act . . . or at least that an official proceeding or investigation [was] foreseeable." (Doc. 319, Def.'s Reply Br., CM/ECF p. 34). He points out that there was

18

no evidence presented at trial to show that a federal investigation or proceeding had been started or even planned in April 1992, when Proctor was murdered, or that any such investigation or proceeding was reasonably foreseeable at that time.  Indeed, the federal government first showed an interest in the matter in June 1993, more than one year after Proctor's death and David Tyler's trial, when an FBI agent started looking into whether federal charges could be brought.[9]

Although the government views *Arthur Andersen* as simply dealing with jury instructions that failed to convey the necessary mens rea element for a "knowingly corrupt persuasion" offense, the case has been understood as applying to other obstruction-of-justice offenses and the nexus requirement for those offenses, as Defendant's citations show: *United States v. Phillips*, 583 F.3d 1261, 1263-64 (10th Cir. 2009)(extending the *Aquilar* nexus requirement to an offense under section 1512(c)(2) and finding support for doing so in *Arthur Andersen*'s reliance on *Aquilar* for its nexus requirement); *United States v. Matthews*, 505 F.3d 698, 707-08 (7th Cir. 2007)(applying *Arthur Andersen*'s nexus requirement to an offense under 18 U.S.C. § 1512(c)(1)); *United States v. Hayes*, No. 09-397, 2010 WL 2696894, at *6 (M.D. Pa. July 7, 2010)(equating *Aquilar*'s nexus requirement with *Arthur Andersen*'s nexus requirement and applying that requirement to an offense under 18 U.S.C. § 1519), *overruled by United States v. Moyer*, ___ F.3d ___, ___, 2012 WL 639277, at *10-11 (3d Cir.

---

[9]   Defendant does not explain the relevance of a federal investigation when the offenses deal with an official proceeding and a law-enforcement-officer communication but probably means federal investigation to cover the latter element.

2012)(refusing to apply the *Aquilar* and *Arthur Andersen* nexus requirements to section 1519).

Nevertheless, we agree with the government that the nexus requirement the Supreme Court created in *Arthur Andersen* does not apply to convictions under section 1512(a)(1)(A) and (C) for tampering with a witness by murder and under section 1512(b)(1) and (b)(3) for tampering with a witness by intimidation and threats. *Arthur Andersen* is distinguishable for the reasons that are apparent from the government's discussion of the jury instructions.

First, although Arthur Andersen was charged under section 1512(b), specifically subsections (b)(2)(A) and (B), and Defendant was also charged under section 1512(b), specifically subsections (b)(1), (b)(2)(D) and (b)(3), the offenses charged were different. Arthur Andersen was charged with knowingly corrupt persuasion intended to cause its employees to withhold documents from official proceedings and to alter documents for use in official proceedings. As the Supreme Court pointed out in *Arthur Andersen*, the conduct underlying the offense, persuasion, is by itself not inherently wrong, even persuasion intended to cause a person to withhold testimony or documents from a government proceeding or government official. The jury instructions therefore had to convey that the only persuasion punishable as charged was persuasion wrongfully intended to obstruct an official proceeding. The nexus requirement the Court grafted onto the statute, that the defendant at least be contemplating a particular official

proceeding, was intended as further insurance that a defendant had the requisite mens rea.

In contrast, Tyler was charged with different offenses under section 1512(b), tampering with a witness by intimidation and by threats, and with an offense under section 1512(a)(1)(A) and (C), tampering with a witness by murder.  As the government points out, the conduct underlying these offenses necessarily provides the mens rea or consciousness of wrongdoing that is an element of the offense.  (Doc. 314, Govt.'s Br., CM/ECF pp. 7-8).  *See Moyer*, *supra*, ___ F.3d at ___, 2012 WL 639277, at *11 ("That the accused's intent must be wrongful is evident from the nature of the acts prohibited")(quoted case and internal quotation marks omitted).  *Cf. Tyler*, *supra*, 281 F.3d at 91 n.6 (in considering Tyler's constitutional vagueness challenge to section 1512 on direct appeal, questioning whether he had standing to do so since "his conduct is so clearly prohibited" by the provision).  There is thus no reason to graft onto Tyler's offenses the *Arthur Andersen* nexus requirement, as the statutory elements are sufficient to insure that innocent conduct is not punished.

As Defendant has shown, courts have extended the *Arthur Andersen* nexus requirement to other obstruction-of-justice offenses.  However, those cases are distinguishable.  The statutory language at issue in those case may have presented the same concern about culpable conduct that was present in *Arthur Andersen*.  In *Phillips*, the court noted the similarity of the language in section 1503 and section 1512(c)(2) in deciding to incorporate the *Aquilar* nexus requirement into section 1512(c)(2), with

21

support from *Arthur Andersen*.  583 F.3d at 1263-64.  In *Matthews*, the court applied the

*Arthur Andersen* nexus requirement to an offense under 18 U.S.C. § 1512(c)(1) after

noting the similarity of the statutory language to section 1512(b)(1).  505 F.3d at 707-

08.[10]

       *Arthur Andersen* has not altered the legal landscape for all section 1512

offenses, as Defendant has argued pro se.  Indeed, for offenses involving the law-

enforcement-officer-communication element (and Defendant was charged in the

conjunctive in both of his section 1512 offenses on that element and the official

proceeding element), courts have ruled that *Arthur Andersen* does not apply to

obstruction-of-justice offenses based on the law-enforcement-officer-communication

element.  *See United States v. Carson*, 560 F.3d 566, 581-82 (6th Cir. 2009); *United*

*States v. Ronda*, 455 F.3d 1273, 1287-88 (11th Cir. 2006).

       We thus conclude that we lack jurisdiction over the section 2241 petition to

the extent it is based on *Arthur Andersen*.

          2.  Fowler *Does Not Establish that Defendant Is*
             *Innocent of His Obstruction-of-Justice Offenses*

       In *Fowler v. United States*, ____ U.S. ____, 131 S.Ct. 2045, 179 L.Ed.2d

1099 (2011), the Supreme Court interpreted the law-enforcement-officer-communication

prong of section 1512(a)(1)(C), the offense of tampering with a witness by murder.  The

---

      [10]   Defendant also cites *United States v. Kaplan*, 490 F.3d 110 (2d Cir. 2007), but
that case is distinguishable because it deals with a corruptly-persuades offense.

Court held that when a defendant has the general intent to prevent the victim from

communicating with a law enforcement officers in general (and not federal officers in

particular), to satisfy this element of the offense:

> the Government must show *a reasonable likelihood* that, had,
> *e.g.*, the victim communicated with law enforcement officers,
> at least one relevant communication would have been made
> to a federal law enforcement officer.  That is to say, where the
> defendant kills a person with an intent to prevent
> communication with law enforcement officers generally, that
> intent includes an intent to prevent communications with
> *federal* law enforcement officers only if it is reasonably likely
> under the circumstances that (in the absence of the killing) at
> least one of the relevant communications would have been
> made to a federal officer.
>
>   The Government need not show that such a
> communication, had it occurred, would have been federal
> beyond a reasonable doubt, nor even that it is more likely
> than not.  For, as we have said, one can act with an intent to
> prevent an event from occurring without it being true beyond a
> reasonable doubt (or even more likely than not) that the event
> would otherwise occur. . . . But the Government must show
> that the likelihood of communication to a federal officer was
> more than remote, outlandish, or simply hypothetical.

*Id.* at __, 131 S.Ct. at 2052.  In doing so, the Court rejected the standard employed by

the Eleventh Circuit below, which had ruled that this prong of the statute was satisfied if

the government showed "'a *possible* or *potential* communication to federal authorities.'"

*Id.* at __, 131 S.Ct. at 2048 (quoting the case below, 603 F.3d 883, 888)(emphasis in the

Eleventh Circuit opinion).

        Defendant argues that the evidence at his trial did not meet the Supreme

Court's standard, that the government had only shown a possible or potential

communication to a federal law enforcement officer.  In support, he asserts that the

evidence had only shown that Proctor had communicated with Pennsylvania law

enforcement officers "and that neither she nor any law enforcement –- neither state nor

federal –- contemplated that she would ever communicate with federal officers or

[participate] in a federal investigation."  (Doc. 336, Def.'s Supplemental *Fowler* Br.,

CM/ECF p. 14).

   We have carefully reviewed the arguments Defendant has made from the

record on his *Fowler* claim, and we must agree with the government that the evidence

presented at trial on this issue as recited in the "Background" section of this

memorandum meets the *Fowler* standard.

   To begin with, the Supreme Court granted review in *Fowler* to resolve a

circuit split.  On one side were circuits that took the Eleventh Circuit approach.

Significantly, however, on the other side were circuits like the Third Circuit, which on this

prong of the offense have required "'additional appropriate evidence'" that the victim

*plausibly* might have turned  to federal officials.'"  ___ U.S. at ___, 131 S.Ct. at 2048-49

(quoting *United States v. Lopez*, 372 F.3d 86, 91-92 (2d Cir. 2004)(emphasis in *Lopez*)).

In fact, the Court cited *United States v. Bell*, 113 F.3d 1345 (3d Cir. 1997), Tyler's co-

defendant's case, as being on the latter side of the split.

   In *Bell*, the Third Circuit held on this prong of the section 1512(a)(1)(C)

offense, "that the government must prove that at least one of the law-enforcement-officer

communications which the defendant sought to prevent would have been with a federal

24

officer," *id.* at 1349, "or to an officer authorized to act on behalf of the federal government." *Id.* at 1350.  In addition, the government must provide "additional appropriate evidence." *Id.* at 1349 (quoted case and internal quotation marks omitted). In *Bell* (and by extension in Tyler's case), such additional appropriate evidence was proof, in part, of the Tri-County Drug Task Force and the fact that it "was a joint federal-state effort that had developed federal cases in the past . . . ." *Id.* at 1350 n.4.

We can thus reject Defendant's *Fowler* claim because the issue has already been addressed on his second direct appeal.  On that appeal, Tyler argued that the evidence was not sufficient to prove that Doreen Proctor would have communicated with a federal law enforcement officer.  Relying on *Bell*, the Third Circuit rejected the argument.  Employing the reasonable doubt standard, the court stated:

> The evidence showed Ronald Diller, who coordinated the Tri County Drug Force, served the federal government as a "law enforcement officer" under 18 U.S.C. § 1515(a)(4).  Diller "would advise and consult" with the federal Drug Enforcement Agency (DEA) "on a regular basis," and he had authority to develop cases.  Indeed, Diller intended to refer Doreen Proctor to the DEA as a potential federal witness.  The government need not have demonstrated Tyler believed Proctor would communicate with persons whom Tyler "knew or believed to be federal officers."  *Bell*, 113 F.3d at 1349. Section 1512 requires "proof that the officers with whom the defendant believed the victim might communicate would in fact be federal officers."  *Id.*  Viewing the evidence in the light most favorable to the government, we reject Tyler's contention.

*United States v. Tyler*, 281 F.3d 84, 99-100 (3d Cir. 2002)(footnote omitted).  The Third Circuit used the reasonable doubt standard, which easily meets the Supreme Court's

requirement that the government need only show a reasonable likelihood that a communication to a federal officer would have taken place, not proof beyond a reasonable doubt.

Defendant argues that the evidence is insufficient because there was no showing that a federal proceeding or federal investigation had been initiated or even contemplated at the time Proctor was murdered.  That there was no such evidence is true but irrelevant to the issue, whether the evidence showed there was a reasonable likelihood that, had Proctor communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer.

Defendant also attacks testimony from Detective Fones concerning what Proctor had told him about drug dealing as hearsay.  However, as the Third Circuit concluded on direct appeal, the testimony was not hearsay because it was not used to prove the truth of the matter asserted but "only to demonstrate that federal officials had jurisdiction to initiate a federal drug investigation."  *Tyler*, 281 F.3d at 98.

Additionally, Defendant argues that the jury instructions erroneously allowed the jury to find this prong satisfied on the possibility that Proctor would communicate with a federal officer.  This argument overlooks our limited jurisdiction on this section 2241 petition.  Having already had a section 2255 motion adjudicated, Defendant is only entitled to relief if he can show that in light of *Fowler* no reasonable juror would have found him guilty of the two obstruction-of-justice offenses on the evidence presented.  This is not an inquiry that takes jury instructions into account, just

26

the sufficiency of the evidence.  *See Parke v. Kirby*, 441 F. App'x 64, 66 (3d Cir. 2011)(nonprecedential)(a claim of factual innocence based on an unconstitutional jury instruction presented as a claim for relief in the section 2241 petition, and not on a previously unavailable legal interpretation, does not make section 2241 an available remedy); *Gardner v. Holt*, No. 11-1312, 2011 WL 5520297, at *2 (M.D. Pa. Nov. 14, 2011)(a petitioner cannot invoke *Dorsainvil* when his claim of factual innocence is based on improper jury instructions that allowed him to be found guilty of conduct that was not criminal)(Caldwell, J.).

We have considered other arguments Defendant has made about the "federal nexus" requirement discussed in *Fowler* and conclude they have no merit.  We thus conclude that we have no jurisdiction over the section the 2241 petition to the extent it is based on *Fowler*.

C.  *The Rule 60(b) Motion Raising the* Apprendi-*Type Claim*

Defendant's second motion, relying on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005),[11] argues that the sentence of life imprisonment he received for tampering with a witness by murder is unconstitutional because it is based on a finding of premeditation made by the court at sentencing rather than by the jury.

---

[11] *Blakely* and *Booker* are cited in one of Defendant's counseled briefs.  (Doc. 319, CM/ECF p. 38).

27

Defendant invokes Fed. R. Civ. P. 60(b) and the All Writs Act, 28 U.S.C. § 1651, as authority for filing this motion.  For the reasons set forth above in connection with Defendant's *Arthur Andersen* and *Fowler* claims brought under section 2241, Defendant cannot pursue this claim by way of Rule 60(b).  *See also United States v. Lizardo*, 309 F. App'x 564, 565 (3d Cir. 2009)(nonprecedential)(*Apprendi* challenge to the defendant's sentence could not be brought under Rule 60(b) since it was really a second or successive 2255 motion).  Nor can it be brought under section 2241 because section 2255 was not inadequate or ineffective to raise an *Apprendi*-type claim even if the cases were decided after Defendant's conviction became final.  *See Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002)(section 2241 was not available to raise an *Apprendi* claim simply because *Apprendi* had not been decided at the time the defendant had filed his 2255 motion); *Estupinan v. Nash*, 186 F. App'x 196, 197-98 (3d Cir. 2006)(nonprecedential)(citing *Okereke* in ruling that section 2241 was not available to make a *Booker* challenge to a 1988 conviction).  Additionally, even if we could consider this *Apprendi*-type claim, *Apprendi*, *Blakely*, and *Booker*, do not apply retroactively to cases on collateral review.  *See Reinhold v. Rozum*, 604 F.3d 149, 154 and n.4 (3d Cir. 2010)(neither *Apprendi* nor *Booker* apply retroactively and "it stands to reason" that neither does *Blakely*).  *See also Hazel v. Williamson*, No. 07-569, 2007 WL 1959303, at *2 (M.D. Pa. July 2, 2007)(Caldwell, J.).

Further, the Third Circuit has already ruled on this claim when Defendant presented it in his 2255 proceedings, citing only *Apprendi*.  On his appeal of the denial of

his 2255 motion, the court ruled Defendant had no *Apprendi* claim because: (1) "the

instructions and the subsequent findings of the jury encompassed the elements of first

degree murder"; and (2) the sentence of life imprisonment did not exceed the statutory

maximum sentence for second-degree murder. *United States v. Tyler*, 207 F. App'x 173,

176 (3d Cir. 2006)(nonprecedential).

IV.   *Conclusion*

We will dismiss Defendant's first motion (Doc. 310), treated as a petition

under 28 U.S.C. § 2241, for lack of jurisdiction.  Since the motion was really a 2241

petition, we need not decide whether to grant a certificate of appealability as Defendant

does not need a certificate to appeal our order dismissing his petition.  *Exinia v. United

States*, 2012 WL 90185, at *2 (3d Cir. 2012)(nonprecedential).

We will dismiss the second motion (Doc. 312), also for lack of jurisdiction.

Since this was an outright challenge to Defendant's sentence of life imprisonment, it was

really a second 2255 motion, which requires us to decide whether to grant a certificate of

appealability.  We will deny a certificate of appealability, based on the analysis in this

memorandum.  However, Defendant is advised that he has the right to appeal our order

denying his 2255 motion, *see* 28 U.S.C. § 2253(a), and that our denial of a certificate of

appealability does not prevent him from doing so, as long as he also seeks a certificate

of appealability from the court of appeals.  *See* Federal Rule of Appellate Procedure 22.

We will issue an appropriate order.


 /s/ William W. Caldwell
William W. Caldwell
United States District Judge


March 20, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,      :
        :
        v.        :  CRIMINAL NO.  1:96-CR-106
        :
WILLIE TYLER,      :
        Defendant      :

*O R D E R*

AND NOW, this 20th day of March, 2012, it is ordered that:

   1.  Defendant's motion (Doc. 310) to vacate his convictions for obstruction of justice in Counts II and III, treated as a petition under 28 U.S.C. § 2241, is dismissed for lack of jurisdiction.

   2.  Defendant's motion (Doc. 312), seeking to vacate his sentence of life imprisonment, is dismissed for lack of jurisdiction as substantively being a second 28 U.S.C. § 2255 motion.

   3.  A certificate of appealability is denied for Doc. 312.

                /s/ William W. Caldwell
               William W. Caldwell
               United States District Judge