IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | :   CRIMINAL NO. 1:96-CR-106 |
| | : |
| WILLIE TYLER, | :   (Judge Caldwell) |
| Defendant | : |

*M E M O R A N D U M*

I.  *Introduction and Procedural History*

This case is here on remand from the Third Circuit.  In August 2000, defendant, Willie Tyler, was convicted of obstructing justice by tampering with a witness by murder and by tampering with a witness by intimidation and threats.  He is serving a life sentence.  His convictions were upheld on direct appeal, *see United States v. Tyler*, 281 F.3d 84 (3d Cir. 2002)(*Tyler I*), and survived several postconviction challenges, including one under 28 U.S.C. § 2255.  (Doc. 280, memorandum and order of August 11, 2003, denying Defendant's section 2255 motion).

In December 2009, Defendant filed a pro se motion, contending that under *Arthur Andersen LLP v. United States*, 544 U.S. 696, 125 S.Ct. 2129, 161 L.Ed.2d 1008 (2005), the evidence was insufficient to support the convictions.  Counsel was appointed to represent him, and she added the argument that the convictions were also invalid under *Fowler v. United States*, ___ U.S. ___, 131 S.Ct. 2045, 179 L.Ed.2d 1099 (2011).

We reviewed the claims under 28 U.S.C. § 2241 since Defendant was arguing that in light of *Arthur Andersen* and *Fowler*, both handed down after his 2255

motion was decided, he was convicted for conduct that a later change in the law established was not criminal. *See In re Dorsainvil*, 119 F.3d 245, 251-52 (3d Cir. 1997). On March 20, 2012, we denied relief. *See United States v. Tyler*, 2012 WL 951479 (M.D. Pa.). Defendant appealed and the Third Circuit reversed and remanded so that Defendant could have the opportunity to show that under *Arthur Andersen* and *Fowler* he is actually innocent of the obstruction-of-justice offenses. *United States v. Tyler*, 732 F.3d 241 (3d Cir. 2013)(*Tyler II*).

There was the possibility of a hearing at which the government and Defendant could present new evidence bearing on Defendant's actual innocence. *Id.* at 253. However, neither side chose to present new evidence, relying instead on the trial record and related state-court proceedings to submit proposed findings of fact and conclusions of law.

II. *Background*

On April 21, 1992, Doreen Proctor was murdered in Adams County, Pennsylvania. As recounted by the Third Circuit, and supported by the trial record, there was evidence implicating Defendant in the murder. *Tyler II*, 732 F.3d at 244. Proctor was to be a witness later that day in a state-court drug trial against David Tyler, Defendant's brother. These proceedings resulted from an investigation conducted by the Tri-County Drug Task Force, an investigative body formed by "state and local law enforcement officers from Cumberland, Perry and York Counties . . . in central Pennsylvania." *Tyler I*, 281 F.3d at 88. In July 1992, Defendant was arrested and

2

charged under state law with Proctor's murder. Others charged and arrested were David Tyler, Roberta Ronique Bell, Jerome King, David King and Mary Hodge.

Defendant was tried in Adams County for criminal homicide and lesser charges. In May 1993, he was found not guilty of criminal homicide but guilty of conspiracy to intimidate a witness. He received two to four years in prison. In state court, David Tyler was found guilty of murder, and Bell was acquitted of all charges but, like Defendant, Bell was later convicted in federal court of tampering with a witness by murder and tampering with a witness by intimidation and threats. *See United States v. Bell*, 113 F.3d 1345 (3d Cir. 1997)(affirming Bell's conviction).

Defendant served his state time, but on April 16, 1996, a federal grand jury handed up a four-count indictment. At issue here are the offenses charged in Counts II and III. Count II charged Defendant with tampering with a witness by murder in violation of 18 U.S.C. § 1512(a)(1)(A) and (C), and Count III charges him with tampering with a witness by intimidation and threats in violation of 18 U.S.C. § 1512(b)(1), (b)(2)(D) and (b)(3).[1] At the time of the offense, in pertinent part, 18 U.S.C. § 1512(a)(1), dealing with tampering with a witness by murder, provided criminal sanctions for:

> **(a)(1)** Whoever kills or attempts to kill another person, with intent to--
>
>   **(A)** prevent the attendance or testimony of any person in an official proceeding;

---

[1] Count I charged Defendant with conspiracy under 18 U.S.C. § 371 involving the substantive allegations of Counts II, III, and IV. Count IV charged Defendant with using a firearm to commit a crime of violence under 18 U.S.C. § 924(c).

3

>    . . . . or
>
>    **(C)** prevent the communication by any person to a law enforcement officer . . . of the United States of information relating to the commission or possible commission of a Federal offense . . . .

In pertinent part, 18 U.S.C. § 1512(b), dealing with tampering with a witness by intimidation and threats, provided criminal sanctions for:

>    **(b)** Whoever knowingly uses intimidation or physical force, threatens . . . or attempts to do so, or engages in misleading conduct toward another person, with intent to--
>
>    **(1)** influence, delay, or prevent the testimony of any person in an official proceeding;
>
>    **(2)** cause or induce any person to–
>
>    **. . . .**
>
>    **(D)** be absent from an official proceeding to which such person has been summoned by legal process; or
>
>    **(3)** hinder, delay, or prevent the communication to a law enforcement officer . . . of the United States of information relating to the commission or possible commission of a Federal offense . . . .

In pertinent part, Count II charged Tyler with knowingly killing Doreen Proctor on or about April 21, 1992, to prevent her attendance at any future criminal proceedings brought by the Tri-County Drug Task Force (a violation of section 1512(a)(1)(A)) and to prevent her from making a communication to a law enforcement officer of information relating to the possible commission of a federal offense (a violation

of section 1512(a)(1)(c)), the federal offense being distribution of cocaine or the possession with intent to distribute cocaine.

In pertinent part, Count III charged Tyler with intimidating Proctor, using physical force against her and threatening her, all done knowingly to prevent her attendance at any future criminal proceedings brought by the Tri-County Drug Task Force (a violation of section 1512(b)(1)), to cause her to be absent from any future criminal proceedings brought by the Tri-County Drug Task Force (a violation of section 1512(b)(2)(D)) and to prevent her from making a communication to a law enforcement officer of information relating to the possible commission of a federal offense (a violation of section 1512(b)(3)), the federal offense being distribution of cocaine or the possession with intent to distribute cocaine.

In August 2000, the jury acquitted Defendant of the conspiracy charge but found him guilty of the other offenses.[2]  In January 2001, Defendant was sentenced to life in prison on count II, a concurrent sentence of ten years on count III, and a sentence of five years on count IV to run consecutively to the sentence on count III.

III.   *Discussion*

As noted, Defendant was found guilty on Counts II and III for having violated two provisions common to section 1512(a) and section 1512(b): (1) preventing

---

[2]   This was Defendant's second trial.  Defendant's first direct appeal resulted in a remand to determine if Defendant was entitled to a new trial based on *Miranda* issues arising from two statements Defendants had made to police.  *United States v. Tyler*, 164 F.3d 150 (3d Cir. 1998).  We granted Defendant a new trial.

Doreen Proctor's attendance at future criminal proceedings, a violation of the official proceeding provision in both sections, and (2) preventing her from making a communication to a law enforcement officer of information relating to the possible commission of a federal offense, a violation of the investigation-related communications provision in both sections.

The Third Circuit remanded so that Defendant could show that he was actually innocent of conduct that would satisfy either of these provisions in light of *Arthur Andersen* and *Fowler*. We note at the outset that the government concedes that the convictions can no longer be upheld under the official proceeding provision.[3] Thus we need only deal with Defendant's claim that he is actually innocent of the offenses because his conduct did not violate the investigation-related communications provision.

*Fowler* dealt with that provision. In *Fowler*, the Supreme Court held that when a defendant has the general intent to prevent the victim from communicating with a law enforcement officers in general (and not federal officers in particular):

> [T]he Government must show *a reasonable likelihood* that, had, *e.g.*, the victim communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer. That is to

---

[3] *Arthur Andersen* dealt with the official proceeding provision. There, the Supreme Court held that to violate the official proceeding provision in section 1512(b)(2)(A) and (B), a defendant had to have "'acted in contemplation [of a] particular official proceeding.'" *Tyler II*, 732 F.3d at 248 (quoting *Arthur Andersen*, 544 U.S. at 708, 125 S.Ct. at 2137). Here, the government acknowledges that no particular federal proceeding had been contemplated at the time of Proctor's murder. (An "official proceeding" is "a proceeding before a judge or court of the United States." 18 U.S.C. § 1515(a)(1)(A).). In contrast, the Third Circuit had previously upheld Bell's conviction under the official proceeding provision, even after noting that no federal proceeding had been contemplated. *Tyler II*, 732 F.3d at 250 (discussing Bell's case).

> say, where the defendant kills a person with an intent to
> prevent communication with law enforcement officers
> generally, that intent includes an intent to prevent
> communications with *federal* law enforcement officers only if it
> is reasonably likely under the circumstances that (in the
> absence of the killing) at least one of the relevant
> communications would have been made to a federal officer.

*Id.* at __, 131 S.Ct. at 2052 (emphasis in original).  In light of *Fowler*, the Third Circuit has stated that the government must prove the following to satisfy the investigation-related communication provision under either the murder offense or the intimidation offense: "a *reasonable likelihood* that the person whom the defendant believes may communicate with law enforcement *would* in fact make a relevant communication with a federal law enforcement officer."  *Tyler II*, 732 F.3d at 252 (emphasis in original)(footnote omitted).[4][5]

       The Third Circuit permitted both parties to introduce new evidence, id. at 253, but both have declined to do so, relying on the evidence of record in Tyler's federal case, Bell's federal case, and related state-court trials.  To establish his actual innocence,

---

[4] Before *Fowler*, the Third Circuit only required a showing that the defendant believed that the person who would have communicated with law enforcement authorities "might communicate with the *federal* authorities." *Tyler II*, 732 F.3d at 252 (emphasis in original).

[5] The other three elements of tampering with a witness by murder remained the same:

> (1) the defendant killed or attempted to kill a person; (2) the
> defendant was motivated by a desire to prevent the
> communication between any person and law enforcement
> authorities concerning the commission or possible commission
> of an offense; (3) that offense was actually a federal offense . . .

*Tyler II*, 732 F.3d at 252.

7

Defendant must show "that 'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Tyler II*, 732 F.3d at 246 (quoted cases omitted).

Upon review of the parties' arguments, we cannot agree with Defendant that he has established his actual innocence by way of showing that there was no reasonable likelihood that Doreen Proctor would in fact have made a relevant communication with a federal law enforcement officer.  Briefly put, we believe a reasonable juror could conclude that there was a reasonable likelihood that Proctor would have made at least one communication to a federal officer, *see Fowler*, *supra*, ___ U.S. at ___, 131 S.Ct. at 2052, more specifically, to Ronald Diller.  As shown below, Diller is a state officer, but also a law enforcement officer for the purpose of the obstruction-of-justice offenses, as a "law enforcement officer" is not defined just as "an officer or employee of the Federal Government" but also, as a person . . . serving the Federal Government as an adviser or consultant . . . . authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense . . . ." 18 U.S.C. § 1515(a)(4)(A).

The following evidence is pertinent.  The Tri-County Drug Task Force was composed of personnel from Cumberland, Perry and York Counties.  (Doc. 337-1, trial transcript, ECF p. 5).[6]  Ronald Diller, employed by the Pennsylvania Office of Attorney General, Bureau of Narcotics Investigation (BNI), stated he was the Task Force's

---

[6] The trial record appears on the docket at Doc. 337- through 337-7.

coordinator.  (*Id.*).  As its coordinator, according to James A Caggiano, the BNI's director, Diller was responsible for developing the local and state-level cases up to the national level.  (Doc. 337-3, ECF p. 53).  Diller would meet with the local officers and review their cases for "potential multi-jurisdictional involvement."  (Doc. 337-1, ECF p. 7).  Diller testified that when it appeared that a case would go multi-jurisdictional, he would make the appropriate contacts with the DEA, the FBI and the IRS.  (*Id.*, ECF p. 6).  Diller's practice was to review the evidence with the local investigator, debrief the witness, and if the evidence so indicated, bring in federal investigators for the follow-up investigation.  (*Id.*, ECF pp. 12-13).

According to Diller and Caggiano, Diller acted as an adviser and consultant with the DEA.  (Doc. 337-1, ECF p. 6; Doc. 337-3, ECF p. 43).  Between three and five cases are referred annually from the Tri-County Drug Task Force to the DEA for prosecution.  (Doc. 337-1, ECF p. 8).  According to David Humphreys, a special agent with the DEA, the DEA regularly adopted cases from state and local task forces, including the Tri-County Drug Task Force.  (Doc. 337-3, ECF pp. 56-57).  The agent also testified that of the 246 DEA cases initiated in the Middle District of Pennsylvania between 1984 and 1996, 159 (65 percent) of those cases were worked jointly with state and local task forces.  (*Id.*, ECF pp. 59-60).

At the time of her death, Doreen Proctor was an informant for David Fones, a narcotics detective for the Borough of Carlisle Police Department who was also working with the Tri-County Drug Task Force.  (Doc. 337-3, ECF pp. 2, 5).  According to Fones,

Proctor was providing him with information about "individuals she knew in Harrisburg." She also supplied him with information about David Tyler's source for cocaine in New York City and about David Tyler's ties to "various Jamaicans in the Carlisle and Adams County area and said that [David Tyler] also went to Jamaica himself." (*Id.*, ECF pp. 8-9). Fones testified that the next step was evaluation of the information Proctor had provided to see if further investigation was warranted, and this was Diller's duty. (*Id.*, ECF p. 9).

According to Fones, Diller knew of Doreen Proctor; he had worked with her, being present when she made some controlled buys in Carlisle and on one occasion had placed a body wire on her. (*Id.*, ECF p. 10). Detective Fones testified that he would have met with Diller to discuss a further role for her. (*Id.*, ECF p. 11). According to Diller, he had interviewed Proctor about David Tyler, Butch Evans and Mary Jane Hodge, and also about a potential target in Harrisburg. (Doc. 337-1, ECF pp. 9-10).[7] It was significant that Proctor had provided information concerning drug-trafficking activities in Harrisburg because Harrisburg is a "source city" for nearby municipalities and Harrisburg drug distributors generally in turn acquire drugs from "source cities" such as New York City or Philadelphia. (*Id.*, ECF pp. 10-11).

At the time of Proctor's murder, Diller was unaware she had told Detective Fones about David Tyler's drug sources in New York City or ties to Jamaicans. (*Id.*, ECF p. 12). However, that was the type of information Diller said he would have found significant in deciding whether Proctor would be a federal witness. (*Id.*, p. 13). He

---

[7] Proctor had made controlled buys from these individuals.

10

testified that he intended "to fully debrief Doreen Proctor, to discuss with her other individuals or locations that we had previously discussed and continue the investigation from there." (*Id.*, p. 12). Diller intended at the time of Doreen Proctor's murder to refer her to the DEA for use as a witness. (*Id.*, p. 14).

DEA agent Humphreys testified that a witness who could provide the following hypothetical facts would "absolutely" be a federal witness: (1) there was a cocaine distribution network active in Cumberland County; (2) the individual behind the network had drug contacts in Harrisburg, Dauphin County; and (3) this individual traveled to Jamaica to get drugs and has another source of drugs in New York City. (Doc. 337-3, ECF pp. 60-61).

Based on the foregoing, a reasonable juror could conclude that there was a reasonable likelihood that Proctor would have made at least one communication to a federal law enforcement officer, Diller, the adviser or consultant to the federal government.

We recognize Defendant's arguments to the contrary. First, Defendant argues that there is no likelihood that Proctor would have communicated with a federal law enforcement officer because she testified at Mary Hodge's state-court drug trial that her involvement in undercover work was limited to the four controlled drug buys she had made and that she was "out of the business" of being a government informant and witness. (Doc. 353-6, ECF pp. 27-28). As we read this testimony, however, it appears to

relate to undercover work, not to being interviewed about information Proctor had already acquired in making her controlled buys.

Second, Defendant argues Diller was not an adviser or consultant to the federal government because the Third Circuit said he was not as he had never used those terms before to describe himself and admitted that he had "borrowed" them from the affidavit of an Assistant United States Attorney. (Doc. 353-1, ECF pp. 37-38). We disagree that the Third Circuit said Diller was not an adviser or consultant for the reasons given. The court was merely describing his testimony. *See Tyler II*, 732 F.3d at 244.

We take Defendant's third and fourth arguments together. Defendant argues that DEA agent Humphreys' testimony concerning a hypothetical cocaine-distribution ring (Doc. 337-3, ECF pp. 60-61) should be rejected because it is self-serving speculation. Defendant argues that Fones's testimony that Proctor told him about David Tyler's drug connections in New York and Jamaica lacks credibility because:

- it was never documented in any police report;

- it was never heard by another law enforcement officer;

- it was made for the first time four years after Proctor's murder;

- it was never introduced in the multiple state court preliminary hearings, state court drug trials, state court murder trials, or even the federal trial of Roberta Bell;

- it was totally self-serving.

(Doc. 353, ECF p. 39). We reject these arguments as a reasonable juror could nonetheless accept Fones's testimony. The arguments are better made to a jury.

12

We turn now to the remedy available to Defendant. Based on the general verdict returned in this case, the Third Circuit has instructed us that if Defendant has established his actual innocence on only one of the provisions but not on the other, we must vacate both convictions and grant a new trial on the one provision that would be a valid basis for conviction. *Tyler II*, 732 F.3d at 253. Here that means we must vacate the convictions on Counts II and III and grant a new trial on those counts for obstruction of justice based on a violation of the investigation-related communications provision.

We will issue an appropriate order.

                                          /s/ William W. Caldwell
                                          William W. Caldwell
                                          United States District Judge

August 6, 2014