IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : CRIMINAL NO. 1:96-CR-106 |
| | : |
| WILLIE TYLER, | : (Judge Caldwell) |
| Defendant | : |

*M E M O R A N D U M*

I.  *Introduction*

After a remand from the Third Circuit, we scheduled this case for another trial.  Currently before the court are Defendant's motions (set forth in one document) to dismiss the indictment, arguing that retrial is barred by the Sixth Amendment's Confrontation Clause, the Fifth Amendment's Double Jeopardy Clause, and the Fifth Amendment's Due Process Clause.  For the reasons that follow, the motions will be denied.

II.  *Background*

In August 2000, defendant, Willie Tyler, was convicted of obstructing justice by tampering with a witness by murder, 18 U.S.C. § 1512(a)(1), and by tampering with a witness by intimidation and threats.  *Id.* § 1512(b).  The charges arose from the murder of Doreen Proctor on April 21, 1992, who was to be a witness later that day in a state-court

drug trial against Defendant's brother, David Tyler.  Defendant was sentenced to life imprisonment.[1]

His convictions were upheld on direct appeal, *see United States v. Tyler*, 281 F.3d 84 (3d Cir. 2002)("*Tyler* 2002"), and survived several postconviction challenges, including one under 28 U.S.C. § 2255.  (Doc. 280, memorandum and order of August 11, 2003, denying Defendant's section 2255 motion).

In 2009, Defendant initiated proceedings cognizable under 28 U.S.C. § 2241, contending that under *Arthur Andersen LLP v. United States*, 544 U.S. 696, 125 S.Ct. 2129, 161 L.Ed.2d 1008 (2005), and *Fowler v. United States*, 563 U.S. 668, 131 S.Ct. 2045, 179 L.Ed.2d 1099 (2011), he was convicted for conduct that later changes in the law established was not criminal.  On March 20, 2012, we denied relief.  *United States v. Tyler*, 2012 WL 951479 (M.D. Pa.).  On appeal, the Third Circuit reversed and remanded, requiring that Defendant be given the opportunity to show that under *Arthur Andersen* and *Fowler* he was actually innocent of the obstruction-of-justice offenses.  *United States v. Tyler*, 732 F.3d 241 (3d Cir. 2013)("*Tyler* 2013").

In pertinent part, the government organized the indictment as follows.  Count II charged one offense, obstruction of justice under 18 U.S.C. § 1512(a)(1) by tampering with a witness by murder.  The murder was to prevent either one of two things, as the statutory language required: (1) the victim's attendance at future criminal

---

[1] This was Defendant's second federal trial.  Defendant had been convicted in August 1996, but after an appeal, *United States v. Tyler*, 164 F.3d 150 (3d Cir. 1998), we granted him a new trial.

proceedings (the official proceeding provision, subsection (a)(1)(A)), and (2) the victim's communication to a law enforcement officer of information relating to the possible commission of a federal offense (the investigation-related communications provision, subsection (a)(1)(C)).  Count III charged one offense, obstruction of justice under 18 U.S.C. § 1512(b) by tampering with a witness by intimidation and threats.  Like Count II, the conduct was to prevent either one of two things, as the statutory language required: (1) the victim's attendance at future criminal proceedings (the official proceeding provision, subsection (b)(2)(D)), and (2) the victim's communication to a law enforcement officer of information relating to the possible commission of a federal offense (the investigation-related communications provision, subsection (b)(3)).  Defendant was found guilty of both offenses on a general verdict.

On remand, the parties briefed whether Defendant could show that he was actually innocent of conduct that would satisfy either of these provisions and hence show he was innocent of the obstruction-of-justice offenses.  As part of its briefing, the government conceded that, in light of the changes in the pertinent law, it could no longer prove Defendant's guilt under the official proceeding provision.  *United States v. Tyler*, 35 F. Supp. 3d 650, 653 (M.D. Pa. 2014)("*Tyler* 2014").  In regard to the other provision, the investigation-related communications provision, we concluded he had not shown that he was actually innocent of conduct that would satisfy that provision.  *Id.* at 656.  In accord with the Third Circuit's instructions, once we decided Defendant had not shown his actual innocence on both provisions, we vacated the convictions on both Counts II and III and

ordered a new trial on those counts based on a violation of the investigation-related communications provision. *Id.*

Defendant then filed his currently pending pretrial motions to dismiss the indictment, arguing that he should not be subjected to another trial.

III. *Discussion*

A. *The Confrontation Clause Claim*

Defendant contends the Sixth Amendment's Confrontation Clause bars a retrial because the government is relying on a single hearsay statement supposedly made by the victim Doreen Proctor to a law-enforcement officer as the sole proof for the investigation-related communications provision. And since this hearsay statement is the sole proof, he cannot be retried.

As noted, we have decided that a new trial should take place on both Counts II and III based on a violation of the investigation-related communications provision. In the language of the statute, that provision requires, in relevant part, that the government show that the obstruction of justice (either by murder or intimidation) was intended to "prevent the communication by any person to a law enforcement officer . . . of the United States of information relating to the commission or possible commission of a Federal offense . . . ." 18 U.S.C. § 1512(a)(1)(C)(murder) and 1512(b)(3)(intimidation). In *Fowler*, the Supreme Court held that "'in a case . . . where the defendant does not have particular federal law enforcement officers in mind[ ] the Government must show *a*

4

*reasonable likelihood* that, had . . . the victim communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer.'" *Tyler* 2013, 732 F.3d at 248 (quoting *Fowler*, 563 U.S. at 677, 131 S.Ct. at 2052)(emphasis in *Fowler*).  "[T]he Government must show more than 'a mere possibility that a communication would have been with federal officials' and 'that the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical.'" *Id.* (quoting *Fowler*, 563 U.S. at 676, 678, 131 S.Ct. at 2051, 2052).

In the instant case, as we noted in *Tyler* 2014, the government's showing that Doreen Proctor would have had at least one relevant communication with a federal law enforcement officer would stem from the testimony of David Fones, a narcotics detective with the Borough of Carlisle Police Department.  As he testified at Defendant's second federal trial in August 2000, Fones said that Proctor told him that David Tyler (Defendant's brother) had a source for cocaine in New York City, that David Tyler had ties to "various Jamaicans in the Carlisle and Adams County area and that . . . [David Tyler] also went to Jamaica himself." (Doc. 337-3, ECF pp. 8–9).  Fones would have given this information to Ronald Diller, a state investigator who was a federal law enforcement officer by virtue of being an adviser or consultant to the DEA.[2]  In turn, Diller testified that he would have debriefed Proctor and that he intended to refer her to the DEA at the time of her murder for use as a witness.  *Tyler* 2014, 35 F. Supp. 3d at 655.

---

[2] A federal law enforcement officer is defined in part as a person "serving the Federal Government as an adviser or consultant . . . authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense."  18 U.S.C. § 1515(a)(4)(A).

5

Defendant contends that Fones's hearsay statement is inadmissible under the Confrontation Clause in light of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).  In *Crawford*, the Supreme Court held that under the Confrontation Clause testimonial statements of a witness who does not appear at trial are only admissible when the witness is unavailable and the defendant has had a prior opportunity to cross-examine her.  *Id.* at 59, 124 S.Ct. at 1369.  Defendant points out that he has had no prior opportunity to cross-examine Proctor, so he argues it would violate his right to confront the witnesses against him if Fones were allowed to testify about what Proctor allegedly told him.

In opposition, the government contends that Fones's hearsay statement is admissible because it would not be admitted for the truth of the matter it asserts; the government would not be using the statement to show that David Tyler actually had a source of cocaine in New York City, that he actually had ties to various Jamaicans in the Carlisle and Adams County area and that he had actually gone to Jamaica himself.  Instead, it would be offered for the simple fact that Proctor had made the statement, which would support the government's contention that, as a result, she would have made at least one communication to a federal law enforcement officer.  As such, the statement present no Confrontation Clause issue; *Crawford* itself recognizes that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  *Id.* at 59 n.9, 124 S.Ct. at 1369 n.9.

The government also points out Defendant had previously argued that Fones's statement was inadmissible, on the basis that it was hearsay, and that the Third Circuit rejected this argument, reasoning that the statement was admissible under an exception to the hearsay rule for a verbal act. The Third Circuit stated:

> The statements were offered only to demonstrate that federal officials had jurisdiction to initiate a federal drug investigation. The hearsay rule excludes "verbal acts," statements which themselves "affect[ ] the legal rights of the parties or [are] circumstance[s] bearing on conduct affecting their rights." fed. R. Evid. 801(c) advisory committee's note. In this sense, the veracity of Proctor's statement to Fones was irrelevant. Even if David Tyler did not actually operate his drug business outside of Pennsylvania, as Proctor indicated, Proctor's statement provided a jurisdictional basis for initiating a federal investigation into Tyler's activities. As such, the statements were not hearsay. *Cf. Kulick v. Pocono Downs Racing Ass'n, Inc.,* 816 F.2d 895, 897 n.3 (3d Cir. 1987)(testimony of track president's statement not hearsay where not offered to prove truth of its assertions but simply to demonstrate state action).

*Tyler* 2002, 281 F.3d at 98. Likewise, here Fones's statement is admissible to show that Proctor would have communicated with a federal law-enforcement officer, regardless of whether Proctor's statement was true or not.

Defendant argues that this hearsay analysis is no longer true in light of the Supreme Court's subsequent decisions in *Fowler* and *Crawford*. Defendant contends:

> [I]n light of *Fowler* and *Crawford*, the truth of this single, unsubstantiated, and contradicted statement is critical to the Government's burden of proving an element of the offense, *i.e.*, whether there was a possibility of a future federal investigation in which Ms. Proctor might have played a role. This was clearly a fact introduced for the truth of that possibility arising. Indeed, the fact that the Government

7

> asked two trial witnesses to assume its truth demonstrates
> that the Government offered the statement for the truth of the
> matter asserted. *See* (N.T. Humphreys, July 31, 2000, pgs.
> 158-159; N.T. Diller Deposition, July 28, 2000, pgs. 11-12).
> Therefore, it cannot be just a "verbal act," and is, in fact,
> inadmissible hearsay as well as inadmissible under *Crawford.*

(Doc. 376, Def.'s Br. in Support, ECF p. 14 n.5).

We reject this argument for the following reasons. First, Defendant provides us with no evidence Fones's statement was contradicted. Second, the statement will not be admitted to show there was a possibility of a future federal investigation in which Proctor might have played a role but to show that she would have made at least one communication to a federal law enforcement officer. Third, the cited testimony of the two trial witnesses (Doc. 400-2, ECF pp. 2-3, testimony of Humphreys; doc. 353-1, ECF pp. 11-12, Diller deposition) does not establish, without more context, that the government offered the statement to prove the truth of the matter asserted. In any event, since Defendant is going to be retried, the remedy would not be to exclude an admissible piece of evidence but for Defendant to object whenever at the upcoming trial the government does try to use Fones's hearsay improperly.[3]

We conclude that admission of Fones's statement would not violate the Confrontation Clause.[4]

---

[3] For this reason, we also reject Defendant's citation in his reply brief to other parts of the record where the prosecutor allegedly used Fones's hearsay as truth of the matter asserted.

[4] Defendant also argues that it was unlikely that Proctor would have cooperated with law enforcement after the state-court trial for David Tyler because she "was finished with law enforcement cooperation." (Doc. 376, Def.'s Br. in Support, ECF p. 14, n.6). This argument

B. *The Double Jeopardy Claim*

Defendant contends that the Fifth Amendment's Double Jeopardy Clause bars another trial on two grounds. First, in May 1993, he was already subjected to trial in Pennsylvania state court for criminal homicide and lesser charges.[5] We reject this argument because "the dual sovereignty principle" states that "prosecution of the same crime in both the federal and state systems does not violate the Double Jeopardy Clause." *United States v. Wilson*, 413 F.3d 382, 389 (3d Cir. 2005).[6]

Second, citing *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), Defendant contends the Double Jeopardy Clause bars subjecting him to another trial after we vacated the convictions on Counts II and III. According to Defendant, the vacatur of the convictions was the equivalent of granting a motion for a judgment of acquittal on the basis of insufficient evidence, and such an acquittal bars a

---

goes to the strength of the government's case, not to the admissibility of Fones's hearsay. Additionally, while Proctor testified at one state-court trial that her involvement in undercover work was limited to the four controlled drug buys she had made and that she was "out of the business" of being a government informant and witness, (Doc. 353–6, ECF pp. 27–28), as we noted in *Tyler* 2014, this testimony appears to relate only to her undercover work, not to being interviewed about information Proctor had already acquired in making her controlled buys. *Tyler* 2014, 35 F. Supp. 3d at 656. *See also Tyler* 2013, 732 F.3d at 244-45 ("At the time of her death, Proctor no longer engaged in undercover operations but had continued to provide Fones with information on the drug market, including local drug activity in Harrisburg and non-local activity about David's drug sources in New York and Jamaica.").

[5] He was found not guilty of criminal homicide but guilty of conspiracy to intimidate a witness. He received two to four years in prison.

[6] Defendant recognizes this is the law but makes the argument to preserve the claim that the current law should be changed so that the Double Jeopardy Clause covers trials in state and federal court.

retrial under the Double Jeopardy Clause.  Defendant maintains it is immaterial that we concluded there was sufficient evidence for a trial on both Counts on the basis of the investigation-related communications provision.  The key ruling was our determination that Defendant had established his actual innocence in regard to the official proceeding provision.  Once the government had failed to present sufficient evidence on the latter theory of criminal liability, Defendant maintains that under *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), the Double Jeopardy Clause bars giving the government another chance to prove Defendant's guilt on another theory.

*Burks* and *Sanabria* have some superficial resemblance to the instant case. *Burks* held that an appellate court's reversal of a conviction based on insufficient evidence was the equivalent of a trial court's grant of a judgment of acquittal and barred another trial on Double Jeopardy grounds.  Burks, 437 U.S. at 5-6, 17-18, 98 S.Ct. at 2144, 2150-51.  Similarly, it could be argued here that after remand from the Third Circuit our vacatur of the convictions on Counts II and III was the equivalent of a judgment of acquittal.

In *Sanabria,* the defendant was charged with a single offense, conducting an illegal gambling business, by engaging in horse betting and numbers betting.  In what was assumed to be an erroneous interpretation of the indictment, the trial court struck the evidence related to numbers betting.  The court also entered a judgment of acquittal based on the lack of evidence the defendant had engaged in horse betting.  The Supreme Court held that the Double Jeopardy Clause barred a second trial on the

numbers theory of liability for two reasons. First, the indictment, as drafted, charged only one offense, conducting an illegal gambling business, and the judgment of acquittal was entered on the entire count, without distinguishing between theories of liability. 437 U.S. at 66-67, 98 S.Ct. at 2180. Second, even if the trial court's action meant that only the numbers theory was dismissed, the "allowable unit of prosecution" in the statute was an "illegal gambling business," which meant that successive prosecutions on a horse betting theory and a numbers theory was barred, as the only offense designated in the statute was conducting an illegal gambling business. *Id.* at 70-72, 98 S.Ct. at 2182-83.

Similarly, it could be argued here that our decision that there was insufficient evidence on the official proceeding theory means that neither count can be retried under the investigation-related communications theory. Both counts were drafted to charge a single offense that could be committed in two different ways, so that when we decided there was insufficient evidence on one of the ways, retrial was barred on either count on the other way.

We reject Defendant's position. *Burks* and *Sanabria* are distinguishable, for a reason the government advances. Those cases dealt with insufficient evidence to support the conviction. In the instant case, as the government observes, the convictions were vacated not because of insufficient evidence but because of errors of law in the previous trial in light of *Arthur Andersen* and *Fowler.* In regard to the official proceeding theory, the error was in not requiring the government to show that Defendant contemplated a particular federal proceeding. *Tyler* 2013, 732 F.3d at 250-51. In regard

to the investigation-related communications theory, the error was in not requiring the government to show a reasonable likelihood that at least one of the victim's communications with law enforcement would have been with a federal law enforcement officer. *Id.* at 252. In remanding for further proceedings, the Third Circuit recognized that what was involved was error of law. *Id.* at 253 ("A legal theory is invalid when, as here, 'the indictment or the district court's jury instructions are based on an erroneous interpretation of law or contain a mistaken description of the law.'" (quoted case omitted). We add that our order requiring retrial on both counts under the investigation-related communications theory complies with the Third Circuit's instructions on what to do on remand. *Tyler* 2014, 35 F. Supp. 3d at 656 (citing *Tyler* 2013, 732 F.3d at 253).

"[T]he Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." *Lockhart v. Nelson*, 488 U.S. 33, 38, 109 S.Ct. 285, 289, 102 L.Ed.2d 265 (1988). That is exactly what happened here. *Burks* itself recognizes this rule. 437 U.S. at 14, 98 S.Ct. at 2149 (the principle that the Double Jeopardy Clause does not bar retrial of "a defendant whose conviction was set aside because of an *error in the proceedings* leading to conviction is a well-established part of our constitutional jurisprudence")(internal quotation marks and quoted case omitted)(emphasis in original). *See also United States v. Scott*, 437 U.S. 82, 90-91, 98 S.Ct. 2187, 2193-94, 57 L.Ed.2d 65 (1978)("The successful appeal of a judgment of

conviction, on any ground other than the insufficiency of the evidence to support the verdict [citing *Burks*] poses no bar to further prosecution on the same charge."). *Burks* is the exception to this rule. *Lockhart*, 488 U.S. at 39, 102 L.Ed.2d at 290. And *Sanabria* dealt with the opposite situation, an appeal by the government from the trial court's entry of a judgment of acquittal, "when a defendant [who] has been acquitted at trial . . . may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous." *Sanabria*, 437 U.S. at 64, 98 S.Ct. at 2179.

Retrial is not barred after a conviction is vacated for trial error because it serves the interest of the defendant in a fair trial free from error and it serves society's interest in punishing the guilty. *McMullen v. Tennis*, 562 F.3d 231, 238 (3d Cir. 2009)(quoting *Burks*). Retrial is barred after a conviction is vacated for insufficient evidence (1) because it serves the Double Jeopardy Clause's purpose of prohibiting the government from using a second trial to submit evidence it should have supplied at the first trial and (2) because the government cannot complain that it was prejudiced when it was given one fair opportunity to offer its proof. *Id.* at 237. The latter circumstances are not implicated here.

Because Defendant's convictions on Counts II and III were vacated after his successful appeal raising legal error, the Double Jeopardy Clause does not bar retrial on those counts based on the investigation-related communications provision.

> C. *The Due Process Claim Based on Outrageous Government Conduct*

Defendant claims that the government's conduct in this case is outrageous and that the Due Process Clause bars any further prosecution. The Due Process Clause prohibits a defendant from being "convicted of a crime in which police conduct was 'outrageous.'" *United States v. Twigg*, 588 F.2d 373, 379 (3d Cir. 1978). The conduct must be "shocking, outrageous and clearly intolerable." *United States v. Nolan-Cooper*, 155 F.3d 221, 231 (3d Cir. 1998)(quoted case omitted). This "principle is to be invoked only in the face of 'the most intolerable government conduct.'" *United States v. Lakhani*, 480 F.3d 171, 180 (3d Cir. 2007)(quoted case omitted).

Although the defense is typically applied to the government's egregious involvement in the crime itself, *see, e.g.*, *United States v. Pitt,* 193 F.3d 751, 759-62 (3d Cir. 1999), Defendant applies it here to allegedly improper conduct of the prosecutor committed in two ways.

First, according to Defendant, the prosecutor violated due process when he "prompted" Ronald Diller to testify at the August 2000 trial that he was an adviser or consultant to the DEA, thereby providing evidence satisfying the requirement that the victim would have communicated with a federal law enforcement agent. Defendant asserts that the record existing before the August 2000 trial took place establishes that Diller was never an adviser or consultant. Defendant charges that the government had Diller testify in this way "to create the required federal jurisdiction where none existed." (Doc. 376, Def.'s Br. in Supp., ECF p. 26).

14

We disagree. Upon remand from the Third Circuit, we reviewed the evidence to support the contention that Diller was an adviser or consultant to the DEA, as part of a broader inquiry into whether Defendant had shown he was actually innocent of Counts II and III because his conduct did not violate the investigation-related communications provision. *Tyler* 2014, 35 F. Supp. 3d at 654-56. None of this evidence supports the notion that the government invented Diller's status as an adviser or consultant.

Defendant asserts the Third Circuit stated that Diller was not an adviser or consultant, quoting from *Tyler* 2013, 732 F.3d at 244, where the court observed that Diller said he had "borrowed" the terms "adviser" or "consultant" from an affidavit of an Assistant United States Attorney. We have already rejected this argument. *Tyler* 2014, 35 F. Supp. 3d at 656 ("We disagree that the Third Circuit said Diller was not an adviser or consultant for the reasons given. The court was merely describing his testimony.").

Defendant argues that the prosecution committed outrageous conduct in a second way, by intentionally failing to disclose to him before the August 2000 trial exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The exculpatory evidence was a statement from a witness named Mark Spotz, given to the FBI on December 9, 1997, long before the August 2000 trial, but not disclosed to Defendant until April 19, 2016, as part of pretrial discovery for the upcoming trial.

In the statement, Spotz said he had provided the shotgun used in killing the victim and that he and his brother had test-fired the gun beforehand. He also said that on May 27, 1992, he went with a Pennsylvania State Trooper to the area where they test-fired the gun. The trooper found two spent shotgun shells. The trooper "put one of the shells in his pocket and indicated, officially, that he only found one shell." (Doc. 375-1, FBI Form 302, ECF p. 2; Doc. 392-1, ECF p. 102). "Spotz stated that he believes that [the trooper] substituted the shell which he placed into his pocket with the shell found at the murder scene thereby enabling the State Police to make a ballistic match-up of the two shells." (Doc. 375-1, FBI Form 302, ECF p. 2).

Defendant contends this was exculpatory evidence under *Brady* because both Spotz at Defendant's state-court trial and the trooper testified that the trooper found only one shotgun shell that had been test-fired. This led Defendant to comply with the government's request to stipulate to the chain of custody concerning the shotgun shell found at the murder scene when the government had information casting doubt on the chain of custody, that the shell supposedly found at the murder scene was actually recovered from the area where the shotgun had been test-fired.

In opposition, the government points out that any *Brady* claim would be meritless or moot as Defendant has been awarded a new trial and can make use of the evidence that has now been made available to him. The government also argues that Defendant has failed to establish a *Brady* claim because he has failed to show prejudice.

Finally, the government contends its conduct in failing to disclose the evidence before the August 2000 trial was not outrageous.

We agree with the government that Defendant has failed to establish a *Brady* claim or that its conduct in failing to disclose the evidence at issue was such that it should be barred from retrying Defendant.

Defendant has failed to establish a *Brady* claim. A *Brady* claim has three elements. "First, the evidence must be favorable to the accused, either because it is exculpatory, or because it is impeaching." *Dennis v. Secretary, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 284 (3d Cir. 2016)(en banc)(internal quotation marks and quoted case omitted). "Second, it must have been suppressed by the State, either willfully or inadvertently." *Id.* at 283-84 (internal quotation marks and quoted case omitted). "Third, the evidence must have been material such that prejudice resulted from its suppression." *Id.* at 285. "The touchstone of materiality is a reasonable probability of a different result" in the case from disclosure of the suppressed evidence. *Id.* (internal quotation marks and quoted case omitted).

Here, as the government points out, Defendant has failed to argue that any prejudice resulted from the government's failure to disclose the evidence earlier; Defendant has failed to argue that there was a reasonable probability of a different result.

He has only argued that he would not have stipulated to the chain of custody for the shotgun shell found at the murder scene.[7]

Defendant has also failed to establish the intentional conduct that would justify barring retrial based on a *Brady* violation. *See Government of the Virgin Islands v. Fahie*, 419 F.3d 249, 255 (3d Cir. 2005)("While retrial is normally the most severe sanction available for a *Brady* violation, where a defendant can show both willful misconduct by the government, and prejudice, dismissal may be proper.")(footnote omitted). It was the prosecutor who precipitated the December 9, 1997, Spotz interview with the FBI, after being contacted by counsel for a co-defendant, Roberta Bell. Then the prosecutor wrote the undersigned a letter, dated January 16, 1998, summarizing the interview and giving his opinion that Spotz's credibility was low, with citation to other evidence. The letter was copied to various officials. The prosecutor also opined that Spotz's statement had no bearing on the federal prosecutions of Bell or Tyler. (Doc. 392-1, ECF pp. 88-89). The latter opinion is buttressed by Defendant's current inability

---

[7] On the issue of materiality, the government notes that the only evidence presented at trial concerning shotgun shells was that the one shell found at the murder scene was a rifled shotgun slug and the pathologist testified that the victim had died from a rifled shotgun slug. (Doc. 392, Opp'n Br. at ECF p. 49-50). There was no evidence of a ballistic match between two shells. Defendant's reply brief does not attempt to rebut this point.

to show prejudice. In sum, the government's conduct here was not the type of conduct that would support barring a retrial.[8]

We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: November 15, 2016

---

[8] Defendant also argues that the government withheld statements of other witnesses. However, since he does not provided us with copies of the statements, we need not address them.